1  Stephen J. Hirschfeld (SBN118068)
   SHirschfeld@hkemploymentlaw.com
2  Gregory S. Glazer, Bar No. 172197
   gglazer@hkemploymentlaw.com
3  HIRSCHFELD KRAEMER LLP
   505 Montgomery Street 13th Floor
4  San Francisco, CA 94111
   Telephone: (415) 835-9000
5  Facsimile: (415) 834-0443

6  KAPLAN RICE LLP
   Howard J. Kaplan (admitted *pro hac vice*)
7  Hkaplan@kaplanrice.com
   142 W. 57th Street, Suite 4A
8  New York, New York 10019-3300
   Telephone: (213) 235-0300

9
   Attorneys for Defendants
10 The Legacy Agency, Inc., GSE Worldwide,
   Inc, .and GCM Sports Holdings, Inc.

11              UNITED STATES DISTRICT COURT

12             CENTRAL DISTRICT OF CALIFORNIA

13                   SOUTHERN DIVISION

14

15
   GREGORY GENSKE, and                Case No. 8:19-cv-00466-AG-DFM
16 individual residing in California,  Hon. Andrew Guilford

17            Plaintiff,

18 vs.                                 Orange Superior Court
                                       Case No.: 30-2019-01045132-CU-OE-CJC
19 THE LEGACY AGENCY, INC., a
   Delaware corporation; GSE           **DEFENDANT THE LEGACY AGENCY**
20 WORLDWIDE, INC., a Delaware         **INC'S ANSWER &**
   corporation; GCM SPORTS             **COUNTERCLAIMS**
21 HOLDINGS, INC.: TLA WORLD,
   PLC, a United Kingdom public
22 limited company; and DOES 1
   through 20.,
23
            Defendants.
24

25

26

27

28

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

Defendant The Legacy Agency, Inc. ("TLA") (referred to as the "Defendant" or "TLA"), by and through its attorneys, Hirshfeld Kraemer LLP and Kaplan Rice LLP, hereby respectfully submits its Answer to the Complaint ("Complaint") filed by Plaintiff Gregory Genske ("Plaintiff" or "Genske"). Defendant states the following upon knowledge of its own conduct, and upon information and belief as to the conduct of others. To the extent any allegation is not specifically admitted, it is denied.

1.    TLA lacks knowledge or information sufficient to form a belief as to the truth of the allegations set forth in the first sentence of paragraph 1 and therefore denies them on this basis. TLA denies the remaining allegations in paragraph 1 of the Complaint, except admits that Genske was employed by TLA from December 2011 until his termination on January 20, 2019.

2.    TLA admits that TLA is a Delaware corporation with its headquarters in New York, and is registered to do business in California.

3.    TLA admits that TLA Worldwide, PLC ("TLAWW") is a company formed in the United Kingdom, with principal place of business in London, United Kingdom. TLA denies the remaining allegations of paragraph 3 of the Complaint.

4.    The allegations in paragraph 4 of the Complaint are legal conclusions to which no response is required. To the extent that a response is required, TLA denies the allegations set forth in paragraph 4, except admits that GSE is a corporation incorporated in Delaware.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5.      TLA denies the allegations set forth in paragraph 5, except admits that GCM is a corporation incorporated in Delaware, and refers to the Purchase and Sale Agreement dated November 30, 2018, as amended for the contents thereof.

6.      TLA denies the allegations set forth in paragraph 6 of the Complaint.

7.      TLA denies the allegations set forth in paragraph 7 of the Complaint.

8.      TLA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 8 of the Complaint, and therefore denies them on that basis.

9.      TLA admits the allegations in paragraph 9 of the Complaint to the extent that TLA is authoried to do business in California and has consented to personal jurisdiction through a forum selection clause in Genske's employment agreement. TLA denies the remaining allegations in paragraph 9 of the Complaint.

10.     TLA denies the allegations set forth in paragraph 10 of the Complaint.

11.     TLA denies the allegations set forth in paragraph 11 of the Complaint.

12.     TLA denies the allegations set forth in paragraph 12 of the Complaint, except refers to Genske's employment agreement for the contents thereof.

13.     TLA submits that the allegations set forth in paragraph 13 of the Complaint are a characterization of the relief that Plaintiff seeks in this action, to which no response is required.  To the extent that a response is required, TLA denies the allegations set forth in paragraph 13 of the Complaint.

14. TLA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 14 of the Complaint, and therefore denies them on this basis.

15. TLA lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 15 of the Complaint, and therefore denies them on this basis, except admits that LS Legacy Sports Group LLC entered into an Asset Purchase Agreement with TLA Acquisitions Limited as Buyer, The Legacy Agency Inc. and TLA Worldwide LC, dated as of September 16, 2011, and refers to the agreement for the content thereof.

16. TLA denies the allegations in paragraph 16 of the Complaint, except admits that Genske entered into an employment agreement with TLA in December 2011.

17. TLA denies the allegations in paragraph 17 of the Complaint, except refers to the Genske employment agreement and the amendment thereto for the contents thereof.

18. TLA denies the allegations in paragraph 18 of the Complaint.

19. TLA denies the allegations in paragraph 19 of the Complaint, except admits that TLA's agents represent professional athletes and TLA earns revenue from contracts its agents secure for athletes.

20. TLA denies the allegations in paragraph 20 of the Complaint, except refers to Genske's employment agreement for the contact thereof.

4

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21.     TLA denies the allegations in paragraph 21 of the Complaint.

22.     TLA denies the allegations in paragraph 22 of the Complaint.

23.     TLA admits that Mike Principe was and is the CEO of GSE and TLA.

24.     TLA admits the allegation in the first two sentences of paragraph 24 of the Complaint. TLA lacks knowledge or information sufficient to form a belief as to the truth of the remainder of the allegations in paragraph 24 of the Complaint, and therefore denies them on this basis, except refers to the referenced Long-Term Compensation Plan for its contents.

25.     TLA denies the allegations in paragraph 25 of the contents.

26.     TLA denies the allegations in paragraph 26 of the contents.

27.      TLA denies the allegations in paragraph 27 of the Complaint, except refers to the press releases referenced therein for their contents.

28.     TLA denies the allegations in paragraph 28 of the Complaint.

29.     TLA denies the allegations in paragraph 29 of the Complaint.

30.      TLA denies the allegations in paragraph 30 of the Complaint, except admits that it has ongoing rights in player contracts from which it will derive revenue.

31.     TLA denies the allegations in paragraph 31 of the Complaint.

32.     TLA denies the allegations in paragraph 32 of the Complaint.

33.     TLA denies the allegations in paragraph 33 of the Complaint.

34.     TLA denies the allegations in paragraph 34 of the Complaint, except admits that GCM Sports Holdings, Inc. entered into a Purchase and Sale Agreement

with respect to the purchase of The Legacy Agency, Inc., among other assets, in December 2018, and that the sale transaction closed in December 2018.

35.     TLA denies the allegations in paragraph 35 of the Complaint, except admits that GCM Sports Holdings, Inc. entered into a Purchase and Sale Agreement with respect to the purchase of The Legacy Agency, Inc. among other assets, in December 2018, that the sale transaction closed in December 2018, and refers to the December 28, 2018 email for the contents thereof.

36.     TLA denies the allegations in paragraph 36 of the Complaint, except admit that GCM Sports Holdings, Inc. entered into a Purchase and Sale Agreement with respect to the purchase of The Legacy Agency, Inc. among other assets in December 2018, and that the sale transaction closed in December 2018.

37.     TLA denies the allegation in the first sentence of paragraph 37 of the Complaint.  The remaining allegations are Plaintiff's summary of the standard practice of the baseball arbitration process to which no response is necessary. To the extent that a response is required, TLA denies the allegations set forth in paragraph 37 of the Complaint.

38.     TLA denies the allegations in paragraph 38 of the Complaint, except admit that agents owe their player clients a fiduciary duty.

39.     TLA denies the allegations in paragraph 39 of the Complaint, except admits that Liad Meidar sent Genske a memorandum on January 4, 2019 titled "Possible Termination of Your Employment," and refers to the Memorandum for the

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

contents thereof. TLA further admits that Genske was asked to attend a telephone call on January 5, 2019.

40.     TLA denies the allegations in paragraph 40 of the Complaint, except admits that Genske attended the telephone call on January 5, 2019. TLA further admits that on January 6, 2019, Liad Meidar sent a memorandum to Genske titled "Notice of Intended Termination," and refers to the Memorandum for  the contents thereof.

41.     TLA denies the allegations in paragraph 41 of the Complaint.

42.     TLA denies the allegations set forth in paragraph 42 of the Complaint, except admits that Genske's employment was terminated on January 20, 2019.

43.     TLA denies the allegations in paragraph 43 of the Complaint.

44.     TLA denies the allegations in paragraph 44 of the Complaint.

45.     TLA denies the allegations in paragraph 45 of the Complaint, except refers to the player agreements in question for their content.

46.     TLA denies the allegations in paragraph 46 of the Complaint.

47.     TLA denies the allegations in paragraph 47 of the Complaint.

48.     TLA denies the allegations in paragraph 48 of the Complaint.

## CLAIMS FOR RELIEF
### First Cause of Action
**(Breach of Employment Contract and Implied Covenant of Good Faith and Fair Dealing Therein Against All Defendants)**

49.     TLA refers to and reasserts their responses to the allegations set forth in

paragraphs 1 through 48 of the Complaint as if fully set forth herein.

50. TLA denies the allegations in paragraph 50 of the Complaint.

51. TLA denies the allegations in paragraph 51 of the Complaint.

52. TLA denies the allegations in paragraphs 52 (a) – (e) of the Complaint.

53. TLA denies the allegations in paragraph 53 of the Complaint.

54. TLA denies the allegations in paragraph 54 of the Complaint.

**Second Cause of Action**
**(Violation of California Labor Code Section 2802 Against All Defendants)**

55. TLA refers to and reasserts their responses to the allegations set forth in paragraphs 1 through 54 of the Complaint as if fully set forth herein.

56. TLA denies the allegations in paragraph 56 of the Complaint.

57. TLA admits that it entered into an employment agreement with Genske dated as of December 8, 2011, and that his employment was terminated on January 20, 2019.

58. TLA denies the allegations in paragraph 58 of the Complaint.

59. TLA denies the allegations in paragraph 59 of the Complaint.

60. TLA denies the allegations in paragraph 60 of the Complaint.

**Third Cause of Action**
**(Violation of California Labor Code Section 203 Against All TLA and GSE)**

61. TLA refers to and reasserts their responses to the allegations set forth in paragraphs 1 through 60 of the Complaint as if fully set forth herein.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

62.     TLA denies the allegations in paragraph 62 of the Complaint.

63.     TLA denies the allegations in paragraph 63 of the Complaint.

64.     TLA denies the allegations in paragraph 64 of the Complaint.

65.     TLA denies the allegations in paragraph 65 of the Complaint.

<u>**Fourth Cause of Action**</u>
**(Declaratory Relief Against All Defendants)**

66.     TLA refers to and reasserts their responses to the allegations set forth in paragraphs 1 through 65 of the Complaint as if fully set forth herein.

67.     TLA denies the allegations in paragraph 67 (a) – (b) of the Complaint, except admit that there is a dispute between Genske and TLA.

68.     TLA refers to the employment agreement and the referenced California law for the contents thereof.

69.     TLA denies the allegations in paragraph 69 of the Complaint.

70.     TLA denies the allegations in paragraph 70 of the Complaint.

## **DEMAND FOR JUDGMENT**

The demand for judgment constitutes legal conclusions to which no response is required. To the extent a response is required, Defendant denies that Plaintiff is entitled to any relief on its claims in this action.

## I.     **AFFIRMATIVE DEFENSES**

Defendant asserts the following defenses in response to the Complaint, undertaking the burden of proof only as to those defenses deemed affirmative

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

defenses by law, regardless of how such defenses are denominated herein. Defendant incorporates by reference the allegations and denials contained in its Answer and Counterclaims and reserves the right to amend its Defenses to assert other Defenses as this action proceeds:

### First Affirmative Defense

Genske's Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

Plaintiffs' claims are barred by the doctrine of unclean hands.

### Third Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by the doctrine of laches, waiver, and estoppel.

### Fourth Affirmative Defense

Plaintiff's claims are barred, in whole or in part, by Plaintiff's bad faith.

### Fifth Affirmative Defense

Plaintiff's claims are barred under the express terms of his employment agreement because he was terminated for cause.

### RESERVATION OF RIGHTS AND DEFENSES

Defendant has not knowingly or intentionally waived any applicable defenses and reserves the right to assert and rely on such other applicable defenses as may become available or apparent during discovery proceedings. Defendant reserves the right to amend his Answer, Counterclaims and/or Defenses accordingly, and/or

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

withdraw Defenses that they determine to be inapplicable during the course of subsequent discovery.

## THE LEGACY AGENCY, INC.'S COUNTERCLAIMS

### Introduction

1.      Since he became President of TLA's Baseball division, Genske has abused his expense account, mismanaged the division, and repeatedly violated the rules of the Major League Baseball Players Association ("MLBPA"),  resulting in fines against Genske that TLA has had to pay on his behalf.  .

2.      Genske also violated his employment agreement in several respects, and conducted a campaign to try to discredit current management, both internally and publicly.

3.      Genske's misconduct led TLA to terminate his employment with cause effective January 20, 2019.   Even after his termination, Genske continues to violate the terms of his restrictive covenants, thus disqualifying him from any further compensation.  He has set up a competing business, notwithstanding clear restrictive covenants in his employment agreement and the purchase agreement pursuant to which he sold his business to TLA in 2011.  Further, upon information and belief, Genske is seeking new clients notwithstanding his MLBPA ban through another former employee of TLA (whom he improperly solicited) that is now working in Genske's new "business."

4.      Genske's conduct has caused serious harm to TLA, including (i) the

fines that TLA has had to pay on his behalf, (ii) losses resulting from Genske's unauthorized promises to both employees and to players, (iii) losses relating to Genske's repeated abuse relating to his expense reimbursement. Genske also has demanded that TLA pay the attorneys' fees that he incurred in connection with the MLBPA investigation, even though he was untruthful in his statements to the company.

5.     TLA thus seeks damages in an amount to be determined at trial, and declarations that (i) his request for reimbursement of attorneys' fees is invalid in light of his bad faith, (ii) Genske is responsible for any losses as a result of Genske's unauthorized promises, and (iii) Genske is disqualified from seeking any further compensation as a result of his termination for cause.

**Parties**

6.     Defendant TLA is a corporation organized under the laws of Delaware, with its principal place of business at 1500 Broadway, 25th Floor, New York, New York 10036.

7.     On information and belief, Plaintiff Genske is an individual residing in Laguna Beach,

California, and is a resident and citizen of the state of California.

**Genske's Employment with TLA**

8.     TLA is a full-service talent agency and sports management practice. TLA, through its agents, represents professional athletes, coaches and personalities.

12

TLA negotiates with professional teams on behalf of its clients, and provides branding and marketing services. TLA offers its services in multiple sports sectors, including baseball. TLA's baseball group was divided into two divisions; one covering North America and one covering Latin America.

9. TLA's baseball agents are subject to the MLBPA "Regulations Governing Player Agents" ("Agent Regulations").

10. In December 2011, TLA hired Gregory Genske ("Genske") as its "President of Baseball." Genske entered into an employment agreement with TLA on December 8, 2011 ("Employment Agreement").

11. As TLA's President of Baseball, Genske managed TLA's North American Baseball ("NABB") division, which consisted of approximately 300 clients headquartered in New York and operating nationwide. Genske was responsible for managing 15 agents and 30 employees. Genske also was responsible for the integration of NABB and the Latin America Baseball ("LATAM") division.

12. Genske and the agents that he supervised were responsible for compliance with the Agent Regulations, and in particular to ensure that their conduct with respect to players conformed to all MLBPA rules, including reporting requirements.

**Genske's Mismanagement of TLA's Baseball Division**

13. TLA provided Genske with broad authority to manage its baseball operations and to supervise the NABB agents. TLA trusted Genske as a senior

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

executive to discharge his duties in a professional, honest, and legal manner, and to comply with all applicable laws and rules, including the Agent Regulations.

14. Genske betrayed that trust, and breached his fiduciary duties to TLA.

15. Rather than setting an example for his subordinates, Genske lived an extravagant lifestyle, improperly expended huge sums of TLA's funds on trips and restaurants, failed to include important provisions (such as confidentiality and other restrictive covenants) in agreements with favored employees, and entered into unauthorized agreements with certain employees and players.

16. Genske ignored his responsibility to integrate NABB and LATAM, instead creating controversies and disputes between the two divisions. Genske even went so far as to encourage NABB agents to attack the leadership of LATAM.

17. Upon information and belief, Genske also encouraged at least one agent that he was charged with supervising to reference Genske as a "key man" in player representation contracts. Genske's Employment Agreement expressly prohibits Genske from directly or indirectly including in a player representation agreement with a key man provision that references Genske. Such provisions, which would allow the player to terminate the agreement if Genske leaves TLA, is contrary to the best interests of TLA.

18. Genske sowed dissension between agents, and between NABB and LATAM, causing dysfunction at the company. Not surprisingly, NABB agents

began leaving TLA, culminating in the departure of a number of key agents in September and October 2017.

19. Indeed, as a result of Genske's misconduct, 70% of the agents in the NABB division departed.

20. Moreover, Genske at times would simply disappear for days and weeks at a time and was not available to discharge his management responsibilities.

21. By 2017, the Baseball Division was in disarray with no clear leadership. These problematic circumstances were exacerbated in September 2017, when TLA learned that Genske had made misrepresentations (both to TLA and the MLBPA) in connection with an investigation into payments to a player.

**The Investigation**

22. In late 2016, TLA learned of an issue regarding Genske's representation of a player.

23. Under the Agent Regulations, Agents are prohibited from making loans or giving gifts to players to induce such player to use or continue to use the Agent's services. Moreover, a permissible loan or gift cannot be made to a player without the approval of MLBPA.

24. Genske assured TLA that he had not engaged in similar conduct with respect to any other player.

Hirschfeld Kraemer LLP
Attorneys At Law
San Francisco

25. Genske's statements were untrue. Genske had in fact violated the Agent Regulations in connection with other players, He also violated the regulation prohibiting "Unlawful or Dishonest conduct."

26. Immediately after this disclosure, a number of key TLA agents departed. Several of the agents that resigned were top revenue earners and integral to TLA's business.

27. TLA was required to pay fines assessed against Genske and Genske suffered other serious consequences as well.

28. These consequences impacted Genske's ability to discharge his duties to TLA.

29. Genske nonetheless has demanded that TLA pay the fines levied against him , and reimburse him for his attorneys fees incurred in connection with the investigation.

**Travel & Entertainment Expense Abuse**

30. Genske repeatedly violated TLA's expense reimbursement policies, incurring expenses for extravagant trips and hotel stays and failing to submit documentation for such expenses. Genske also submitted personal expenses for reimbursement.

31. For example, Genske requested reimbursement for a personal skiing trip in Park City, Utah in the amount of $19,381. TLA reimbursed Genske for that amount. When TLA learned that this was a personal expense, it confronted Genske,

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

who agreed to repay the reimbursement.

32. Also in violation of TLA's expense reimbursement policies, Genske approved improper reimbursement for other employees.

33. Genske frequently flew business class on short trips even though TLA's policy clearly states that business class travel would only be reimbursed for coast to coast trips.

34. In addition to violations of the travel policies and excessive lodging expenses, Genske also pre-authorized engagement gifts, wedding gifts, game tickets, extravagant personal hotel stays, lavish dinners, as well as submitted reimbursement requests for several miscellaneous and personal expenses without providing sufficient documentation.

35. TLA's investigation into Genske's misuse of his expense account and his facilitation of such abuses by other TLA employees is continuing.

**TLA Terminate Genske's Employment For Cause**

36. On January 6, 2019, TLA sent a memorandum to Genske detailing Genske's misconduct and notifying him that his employment would be terminated unless he took the specific steps described therein to cure the deficiencies.

37. Following the issuance of this memorandum, TLA discovered further misconduct by Genske which was not curable.

38. TLA terminated Genske's employment for cause on January 20, 2019.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

**Genske's Post-Termination Breaches of His Employment Agreement**

39.     Following termination of Genske's employment, Genske continued to violate his agreements with TLA.

40.     Genske  agreed to various restrictive covenants, the violation of which would disqualify him from receiving certain compensation.  For example, Genske is prohibited  during  his  employment  and  for  two  years  after  termination  of  his employment from (i) soliciting TLA employees to leave TLA; (ii)  performing any business similar to TLA's business for any person who is or was a client or customer of TLA,  or otherwise interfering with TLA's relationship with any such person; and (iii) disclosing TLA's confidential information to any third party.

41.     Genske  has  improperly  disclosed  confidential  information  to  third parties,  upon  information  and  belief  including  to  at  least  one  player.    Upon information and belief, Genske has disparaged TLA and attempted to interfere with TLA's relationships with its clients, agents and others in the industry.

42.     Genske's violation of these contractual provisions has caused harm to TLA and has resulted in the forfeiture of any and all future compensation.

### First Cause of Action

Breach of Fiduciary Duty

43.      TLA repeats and realleges each and every allegation in each preceding numbered paragraph of this Counterclaim as if fully set forth herein.

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

44.     As a high-level employee and President of Baseball, Genske was employed by TLA in a position of utmost trust and confidence, and owed fiduciary duties to TLA, including but not limited to, duties of loyalty and care. By virtue of these fiduciary duties, Genske was obligated to act prudently in the operation of the TLA's business, to discharge his responsibilities in good faith, to act in the best interests of TLA, and to put TLA's interests before his own.

45.     Genske was and is prohibited from acting in a disloyal manner, or inconsistent with that fiduciary relationship.

46.     Genske breached his fiduciary duties to TLA virtually from the inception of his tenure as TLA's President of Baseball.

47.     As result of Genske's breaches of fiduciary duty set forth herein, TLA was required to incur significant attorneys' fees and to pay fines on his behalf.

48.     Upon information and belief, Genske also increased compensation to certain favored employees and gave others retention bonuses, all without authorization.

49.     Upon information and belief, Genske waived or reduced fees that certain players owed to TLA without authorization. Upon information and belief, Genske did this to induce such Players to use him as an agent.

50.     Upon information and belief, Genske failed to require agents in the NABB division to sign necessary employment related agreements, potentially depriving TLA of customary protections in its employment agreements.

51.     Genske also caused TLA to pay for his extravagant lifestyle, and in certain instances for personal expenses.

52.     Genske's failure to follow TLA's policies and practices, and his misconduct described above, caused damages to TLA, including the fines paid on Genske's behalf, losses related to his unauthorized promises and agreements, and attorneys' fees incurred in connection with , TLA's internal investigation, and in addressing Genske's unauthorized agreements with former TLA agents and certain players.

53.     As a direct and proximate result of Genske's breaches, TLA has suffered and may continue to suffer damages, in an amount to be determined at trial.

## **Second Cause of Action**

### Breach of Employment Agreement

54.     TLA repeats and realleges each and every allegation in each preceding numbered paragraph of this Counterclaim as if fully set forth herein.

55.     Section 1 of Genske's Employment Agreement requires Genske to discharge his duties as an Executive in the "best interests of the Company".

56.     Section 3(e) of Genske's Employment Agreement provides that TLA shall reimburse Genske only for "appropriately documented, reasonable business expenses" incurred by Genske "in the performance of his or her duties" and "in accordance within the Company's policies."

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

57.     Section 6 of Genske's Employment Agreement prohibits Genske from negotiating,

arranging, or creating any representation agreements or other arrangements which contain a "key man" provision that references himself.

58.     Genske also agreed to various restrictive covenants, the violation of which would disqualify him from receiving certain compensation.   For example, Genske is prohibited during his employment and for two years after termination of his employment from (i) soliciting TLA employees to leave TLA; (ii)  performing any business similar to TLA's business for any person who is or was a client or customer of TLA,  or otherwise interfering with TLA's relationship with any such person; and (iii) disclosing TLA's confidential information to any third party.

59.     Implied in Genske's Employment Agreement was an obligation that Genske act in

good faith.

60.     Genske breached his contractual obligations and the implied covenant of good faith and fair dealing.

61.     As a direct and proximate result of Genske's breaches, TLA has suffered and will

continue to suffer damages, including harm to its business, goodwill and reputation in an amount to be determined at trial.

### Third Cause of Action

Intentional Interference With Contractual Relations

62.    TLA repeats and realleges each and every allegation in each preceding numbered paragraph of this Counterclaim as if fully set forth herein.

63.    At all relevant times, Genske knew of the existence of player agent representation agreements .

64.    TLA is informed and believe and thereon allege that, in an effort to interfere with

TLA's rights under the player representation agreements, Genske waived or reduced fees that certain players owed to TLA, without authorization. Genske's intention and desire was solely and improperly to benefit himself.  After the termination of his employment, Genske caused players to breach or terminate their agreements with TLA to  induce players to hire him as their agent.

65.    Genske engaged in the conduct alleged herein with the intent to harm TLA financially and to induce certain players to violate their player agent representation agreements, and/or to make the contractual relationship between certain players and TLA less financially lucrative to TLA.

66.    Upon Information and belief, since termination of the employment, Genske further caused or has attempted to cause players to breach or terminate their agreements with TLA.

67. As a proximate result of the conduct of Genske as alleged herein, TLA was damaged in an amount in to be proven at time of trial.

68. The conduct of Genske as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving TLA of property or legal rights or otherwise causing injury.

### **Fourth Cause of Action**

<u>Intentional Interference With Prospective Economic Advantage</u>

69. TLA repeats and realleges each and every allegation in each preceding numbered paragraph of this Counterclaim as if fully set forth herein.

70. Prior to engaging in the aforementioned conduct, Genske, as President of Baseball, was fully aware that TLA had business relationships with certain players which were very likely to result in economically-advantageous relationships between certain players and TLA.

71. Genske engaged in the conduct alleged above with the intent to interfere with and/or destroy the economically-advantageous relationships between TLA and certain players and to make those relationships less financially lucrative for TLA, while on the other hand, Genske benefitted from acting as the agent for the players to TLA's financial detriment.

72. As a proximate result of Genske's conduct as alleged herein, TLA has been damaged in an amount to be proven at the time of trial.

Hirschfeld Kraemer LLP
Attorneys At Law
San Francisco

**Fifth Cause of Action**

Declaratory Judgment

73.     TLA repeats and realleges each and every allegation in each preceding numbered paragraph of this Counterclaim as if fully set forth herein.

74. An actual controversy has arisen and now exists between the parties.

75.     TLA seeks an order declaring that: (i) Genske's request for reimbursement of attorneys' fees is invalid in light of his bad faith, (ii) Ganske is required to indemnify and reimburse TLA for any losses as a result of Genske's unauthorized agreements and promises with current of former TLA agents and clients, and (iii) Genske is disqualified from seeking any further compensation as a result of his termination for cause, and his violation of the confidentiality provisions and restrictive covenants set forth in his agreement.

76.     The declaratory judgment sought is necessary to enable the parties to ascertain their rights and duties to each other.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant respectfully requests that the Court enter judgment in its favor against Plaintiff and award to Defendants the following relief:

1.     An award of compensatory damages in an amount to be proven at trial;

2.     A declaration that (i)  Genske's request for reimbursement of attorneys' fees is invalid in light of his bad faith, (ii) Genske is required to indemnify and reimburse TLA for any losses as a result of Genske's unauthorized agreements and

promises with current of former TLA agents and clients, and (iii) Genske is disqualified from seeking any further compensation as a result of his termination for cause and his violation of his agreement;

3.     An order awarding Defendants their costs and attorneys' fees to the extent allowed by law;

4.     Any such further and other relief as this Court deems just and proper.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), TLA demands a trial by jury for all issues so triable.

Dated:  April 5, 2019                                    KAPLAN RICE LLP


By:_____
                        Howard J. Kaplan

Attorneys for Defendants
The Legacy Agency, Inc., GSE
Worldwide, Inc., and GCM Sports
Holding, Inc

HIRSCHFELD KRAEMER LLP
ATTORNEYS AT LAW
SAN FRANCISCO

# CERTIFICATE OF SERVICE

## STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I, the undersigned, am a resident of the State of California, over the age of eighteen years, and not a party to the within action. My business address is 233 Wilshire Boulevard, Suite 600, Santa Monica, California 90401. On April 5, 2019, I served the following document(s) by the method indicated below:

### DEFENDANT THE LEGACY AGENCY INC'S ANSWER & COUNTERCLAIMS

☐ by placing the document(s) listed above in a sealed envelope(s) with postage thereon fully prepaid, in the **United States mail** at Santa Monica, California addressed as set forth below. I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited in the U.S. Postal Service on that same day with postage thereon fully prepaid in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ by placing the document(s) listed above in a sealed envelope(s) and by causing **messenger delivery** of the envelope(s) to the person(s) at the address(es) set forth below. I am readily familiar with the business practice of my place of employment with respect to the collection and processing of correspondence, pleadings and notices for hand delivery. On ***, I caused to be served via messenger the above-listed documents.

☐ by **personally delivering** the document(s) listed above to the person(s) at the address(es) set forth below.

☒ by submitting an **electronic** version of the document(s) listed above to the court's approved electronic service vendor.

William J. Brown, Jr., Esq.         T: (949) 705-0080
Lidia Dorota Syksisz, Esq.        bill@brownwegner.com
Matthew K. Wegner             lsykisz@brownwegner.com
Brown Wegner LLP             mwegner@brownwegner.com
2010 Main Street, Suite 1260
Irvine, CA 92614

I declare under penalty of perjury under the laws of the United States of America that the above is true and correct. Executed on April 5, 2019, at Santa Monica, California.

_/s/_
_____
Patricia Dragotta